**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-00682-WJM-MEH

DIGITAL ADVERTISING DISPLAYS, INC., a Colorado corporation,

     Plaintiff,

v.

NEWFORTH PARTNERS, LLC, a California limited liability company,
DHANDO INVESTMENTS, INC., a Delaware corporation, and
ROBERT HOFFER,

     Defendants.

---

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE**

---

Plaintiff Digital Advertising Displays, Inc., ("Plaintiff") brings this action against

Defendants Dhando Investments, Inc., Newforth Partners, LLC, and Robert Hoffer

(collectively "Defendants") based on the attempted purchase of intellectual property

assets.  (ECF No. 55.)  This matter is before the Court on Defendants' Motion for

Summary Judgment (ECF No. 157), and Defendants' Motion to Strike the exhibits

attached to Plaintiff's response opposing summary judgment (ECF No. 200).  For the

reasons set forth below, both motions are denied.

## I.  BACKGROUND

The relevant facts, viewed in the light most favorable to Plaintiff, are as follows.

This case arises out of Plaintiff's attempt to purchase technology developed by

Reactrix Systems, Inc. ("Reactrix"), that allows for human interaction with a projected

image.  Reactrix went into receivership in October 2008, and to avoid bankruptcy,

assigned its property to Reactrix (Assignment for the Benefit of Creditors), LLC ("Reactrix ABC"), then owned by Sherwood Partners, LLC ("Sherwood").   (Am. Compl. (ECF No. 55) ¶ 12.)  On October 31, 2008, Jessam Communications, Inc. ("Jessam"), Plaintiff's alleged business partner, entered into a Letter of Intent with Reactrix ABC to purchase its intellectual property assets (the "IP Assets"), equipment, and customer contracts.  (ECF No. 191-1.)  The Letter of Intent contained a confidentiality clause and gave Jessam the exclusive first right of refusal to purchase the IP Assets.  (*Id.*)  With financial support from Jessam, Plaintiff sought to bid $2 million for the IP Assets. (Deposition of John Jeffrey Storey ("Pl.'s Depo.") (ECF No. 156-1) pp. 182, 215-17.)

        In the course of negotiating the purchase of the IP Assets, Reactrix ABC Vice President Timothy J. Cox introduced Plaintiff to Defendant Robert Hoffer, an investor and part owner of Defendant Newforth Partners, LLC ("Newforth").  (Pl.'s Depo. pp. 165-66.)  Hoffer had an interest in purchasing the IP Assets, and Cox believed that Hoffer and Newforth could serve as additional investors to provide capital for Plaintiff's plan to restart the Reactrix company.  (*Id.*)  Plaintiff and Hoffer executed a Confidentiality and Non-Disclosure Agreement ("NDA") with respect to the purchase of the Reactrix assets.  (ECF No. 157 at 3, 21; Am. Compl. ¶ 140.)  The NDA required that any "proprietary information" received by one party from the other must be "maintained in the strictest confidence" and could not be used, disseminated, or disclosed to any third party for any purpose except solely to evaluate the prospect of the future investment relationship.  (*Id.*)

        In December 2008, Plaintiff met with Hoffer, presented its and Jessam's business plan for the Reactrix assets, and provided Hoffer with a copy of the business

plan. (Pl.'s Depo. pp. 218-21.)  This business plan did not contain comprehensive financial data, but only a summary.  (*Id.* at pp. 218-21, 234-35.)  Plaintiff also disclosed to Hoffer its plan for the use of the IP Assets in contracting with McDonald's Corporation and Microsoft Corporation, including licensing a Reactrix patent then pending for "Wavescape" technology allowing individuals to play games by moving in front of a screen.  (*Id.* pp. 209, 228-29, 241-43.)  The Wavescape technology was to be licensed to Microsoft for a video game system that could compete with the Nintendo Wii without the use of a hand controlled device.  (*Id.* pp. 124-25, 228-29, 260.)  Plaintiff valued the Microsoft license as a $270 million opportunity.  (*Id.* pp. 123-25.)

In January 2009, Cox informed Plaintiff that Reactrix ABC had sold its IP Assets to another purchaser.  (ECF No. 191-6.)  That purchaser was later revealed to be Hoffer, who then represented that he owned the rights to license the IP Assets, although the purchase had not yet been completed.  (ECF No. 191-9.)  In March 2009, Hoffer engaged in negotiations with Chris Beauchamp, the Chief Executive Officer of Monster Media, regarding licensing the IP Assets.  (*Id.*; ECF No. 191-8.)  Hoffer formed a new corporation, Defendant Dhando Investments, LLC ("Dhando"), which was assigned the rights to license the IP Assets.  (ECF No. 191-8.)  Plaintiff alleges that Hoffer and Dhando did not actually purchase the IP Assets until April 10, 2009, in contrast to Hoffer's prior representations, and that Hoffer had previously hidden from Plaintiff and Jessam his intention to compete against them to purchase the IP Assets himself.  (Am. Compl. ¶¶ 49-50, 61, 66, 122, 124.)

On April 11, 2009, Hoffer initiated negotiations with Plaintiff and Jessam to license the IP Assets to them for use in a contract with McDonald's.  (ECF No. 191-10.)

3

Hoffer promised several times to provide this license for Plaintiff's and Jessam's exclusive use with McDonald's.  (Pl.'s Depo. p. 238.)  The license was never provided. (*Id.* p. 239.)  Dhando subsequently sold the IP Assets to Intellectual Ventures.  (ECF No. 192-2.)

On February 16, 2012, Plaintiff filed this action against Hoffer, Newforth, Dhando, and then-Defendants Sherwood and Cox, in Denver County District Court.  (ECF No. 1-1.)  Defendants subsequently removed the action to this Court on March 16, 2012.  (ECF No. 1.)  Plaintiff amended its Complaint on February 6, 2013.  (ECF No. 55.)

After the parties stipulated to dismiss Defendants Sherwood and Cox, as well certain other claims, the remaining claims—numbered as in the Amended Complaint— are: (1) breach of the NDA, asserted against Hoffer and Newforth; (3) breach of the implied covenant of good faith and fair dealing, asserted against Hoffer and Newforth; (4) breach of an agreement to grant a license for the IP Assets, asserted against Dhando; (5) fraud based on false representation, asserted against all remaining Defendants; (6) fraud based on nondisclosure or concealment, asserted against all remaining Defendants; (9) constructive trust, asserted against Dhando; and (10) unjust enrichment, asserted against Hoffer and Dhando.  (ECF Nos. 55, 150, 187.)

On August 23, 2013, Defendants filed their Motion for Summary Judgment as to all remaining claims.  (ECF No. 157.)  On November 20, 2013, Plaintiff filed its Response, along with twenty exhibits in support of its opposition to summary judgment. (ECF Nos. 191-193.)  On November 29, 2013, Defendants filed a Motion to Strike Plaintiff's exhibits, arguing that they are unauthenticated and were not previously produced.  (ECF No. 200.)  Defendants then filed their Reply to Plaintiff's Response on

December 2, 2013.  (ECF No. 202.)  Plaintiff opposed the Motion to Strike (ECF No. 211), and Defendants filed a Reply (ECF No. 218).  Both motions are now ripe for disposition.

## II.  MOTION TO STRIKE

Defendants argue that Plaintiffs' exhibits should be stricken because: (1) all of the exhibits except Exhibit 14 are unauthenticated, and therefore are not admissible under Federal Rule of Evidence 901; (2) Exhibits 1, 2, 5-10, and 14 were not produced during discovery and therefore cannot be used to supply evidence on a motion under Federal Rule of Civil Procedure 37(c)(1); and (3) Exhibit 14, the Affidavit of Joseph Raymond Suarez, is an expert opinion that should be excluded under Rule 37(c)(1) because Plaintiff failed to disclose Mr. Suarez's expert witness report.  (ECF No. 200.)

With respect to Defendants' authentication argument, the Court notes that Plaintiff's decision not to attach its exhibits to any declaration or affidavit authenticating them was at best an ill-advised strategy.  Nevertheless, in order to be considered on a motion for summary judgment, factual support need only be presented "in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c).  There is no requirement that the evidence be actually admitted or authenticated for the Court to consider it on a motion for summary judgment, as long as it would be admissible if duly authenticated. The exhibits at issue—Reactrix business records, e-mails to and from parties, contractual documents and deposition transcript excerpts—are all in a form that would be admissible in evidence.  (*See* ECF Nos. 191 & 192.)  While Plaintiff will be required to authenticate its evidence when moving for its admission at trial, and Defendants may challenge the evidence's authenticity or make any other evidentiary objection they see

fit at that time,[1] Plaintiff need not authenticate otherwise admissible evidence at the summary judgment stage.  Accordingly, for the purposes of summary judgment, the Court will not strike the exhibits based on Plaintiff's failure to authenticate them.

With regard to Defendants' argument that Exhibits 1, 2, 5-10, and 14 were not previously produced, Plaintiff responds that it did, in fact, produce these documents to Defendants.  (ECF No. 211.)  In a verified Response to the Motion to Strike, Plaintiff's counsel certifies that, when he entered his appearance in this case in April 2013, he produced the entire case file to Defendants because he could not be sure which documents Plaintiff's previous counsel had already produced.[2]  (*Id.* at 2.)  Defendants argue that the lack of Bates stamps on the exhibits demonstrates that the documents were not produced before Plaintiff filed them, and that Plaintiff's reference to having produced the "entire file" does not specifically identify these exhibits as having been produced and fails to deny their non-production.  (ECF No. 200 at 3; 218 at 3.)

The Court has no way of determining which party's counsel has failed to thoroughly examine its case file.  However, the Court rejects Defendants' argument that

---

[1] As made clear in the Advisory Committee's Note to the 2010 Amendments to Rule 56(c)(2), a party retains its right to challenge the admissibility at trial of evidence considered at the summary judgment stage, even where that party failed to challenge the evidence's admissibility for purposes of summary judgment.  The Note also clarifies that "[t]here is no need to make a separate motion to strike" to challenge the admissibility of such evidence; as such, Defendants could have raised these arguments as an objection to Plaintiff's exhibits under Rule 56(c)(2).

[2] Plaintiff also states that Defendants' argument is frivolous, and requests an award of attorneys' fees incurred in responding to the Motion to Strike.  (ECF No. 211 at 1, 3.)  As Plaintiff's request was contained within its Response, it violates both this Court's Revised Practice Standard III.B. which states that "[a]ll requests . . . must be contained in a separate, written motion", and D.C.COLO.LCivR 7.1 requiring that "a motion shall be made in a separate paper."  Accordingly, the Court declines to consider this request.

the lack of Bates stamps and Plaintiff's reference to the "entire file" somehow reveal a failure to previously produce these documents.  The Court also rejects Defendants' suggestion in their Reply that Plaintiff's previous discovery violation with respect to electronic documents indicates that Plaintiff failed to produce the separate, unrelated documents at issue here.  (*See* ECF No. 218 at 3-4 (citing ECF No. 129).)  One discovery violation does not establish a second unrelated discovery violation; that is, Plaintiff's failure to search for and produce electronic documents on a separate occasion does not indicate that the non-electronic documents here were absent from those produced from Plaintiff's case file.  Moreover, Plaintiff's counsel stated under penalty of perjury that he previously produced these exhibits.  (ECF No. 211 at 2.)  Accordingly, Defendants have not established that the exhibits were not previously produced, and the Court declines to strike them for purposes of summary judgment.  This ruling does not prevent Defendants from filing any separate motion for additional discovery or for sanctions if they can demonstrate that Plaintiff has violated Rule 26.

Finally, with respect to Defendants' argument regarding expert opinions, the Court finds persuasive Plaintiff's clarification that Mr. Suarez's affidavit contains no expert opinions.  (ECF No. 211 at 1.)  Plaintiff's decision to disclose Mr. Suarez as an expert, and then to file no expert report and choose to use him only as a lay witness, is a questionable strategy.  However, the Court has reviewed Mr. Suarez's affidavit and finds that it contains no expert opinions.  (ECF No. 191-13.)  Therefore, it need not be excluded from consideration on summary judgment.

In sum, Defendants have not established that Plaintiffs' exhibits should be stricken from consideration on summary judgment.  Accordingly, the Motion to Strike is denied.

7

### III.  MOTION FOR SUMMARY JUDGMENT

**A.**   **Legal Standard**

Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem*

*Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute

as to a material fact depends upon whether the evidence presents a sufficient

disagreement to require submission to a jury or conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal*

*Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

The Court must resolve factual ambiguities against the moving party, thus favoring the

right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

**B.**   **Analysis**

Defendants' Motion for Summary Judgment ("Motion") raises three arguments

that summary judgment in their favor is appropriate:[3] (1) Plaintiff's claim for a breach of

---

[3] In their briefing, the parties also discuss the argument that Plaintiff has no standing or is a proxy for a third party which must be joined for the case to proceed.  (*See* ECF No. 202 at 3-5.)  The Court issued an Order to Show Cause with respect to the joinder issue (ECF No. 209), which was discharged in a subsequent Order finding that Monster Media is not a required party and need not be joined (ECF No. 229).  The Court therefore considers this argument resolved, and it will not be reviewed here.

the NDA, and its related claim for a breach of the implied covenant of good faith, fail because there is no evidence that confidential information was given to Defendants or that Defendants disclosed that information; (2) Plaintiff's claim for a breach of the promise to grant a license is unenforceable because it lacked consideration; and (3) all of Plaintiff's claims fail because there is no evidence of damages.  (ECF No. 157 at 3-18.)  The Court will take each argument in turn.

      1.   <u>Breach of NDA and Implied Covenant of Good Faith and Fair Dealing</u>

Plaintiff's claim for breach of the NDA asserts that Hoffer, acting on his own behalf and on behalf of Newforth, received material information regarding Plaintiff's intention to purchase the IP Assets and its business plan to license them, and then disclosed that information to third parties in violation of the NDA.  (Am. Compl. pp. 8-9, 27-28.)  Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, which arises from the NDA, asserts that Hoffer's misleading and false statements to Plaintiff with respect to his purchase of the IP Assets, and his disclosure of material information in violation of the NDA, constituted a breach of the implied covenant.  (*Id.* pp. 30-31.)  Because both of these claims allege a breach of the NDA, the Court will discuss them together.

Defendants make two arguments that these claims must fail: (1) there is no evidence that Plaintiff gave any proprietary information to Hoffer that would have been subject to the confidentiality provision of the NDA, and (2) even if proprietary information was given to Hoffer, there is no evidence that Hoffer disclosed or used that information in violation of the NDA.  (ECF No. 157 at 3-10.)

With respect to the initial disclosure of proprietary information to Hoffer,

Defendants' argument ignores the Court's duty to view all evidence in the light most favorable to Plaintiff.  Defendants admit that in the deposition of John Jeffrey Storey, Plaintiff's Rule 30(b)(6) deponent, Storey attested that in December 2008, he provided proprietary information to Hoffer, including Plaintiff's business plan and information regarding Plaintiff's intentions for licensing the IP Assets.  (*Id.* at 4-5.)  Defendants argue that Storey's testimony was riddled with inconsistencies and that there was no corroborating evidence.  (*Id.* at 5-6; ECF No. 202 at 9.)  However, corroborating evidence is unnecessary if a reasonable jury could believe Storey's testimony and find that proprietary information was disclosed.  *See Anderson*, 477 U.S. at 248.  The Court finds that a reasonable jury could find Storey's testimony credible, and that there is a genuine dispute of fact as to whether proprietary information was transmitted to Hoffer.

As to whether Hoffer disclosed that proprietary information in violation of the NDA, Defendants cite numerous sources of evidence demonstrating that Hoffer never "utilized any information from the Plaintiff in an impermissible manner" because he did not license the IP Assets to Rubbermaid or McDonalds, and did not take on Reactrix customers or employees.  (ECF No. 157 at 6-10.)  This evidence is pertinent to whether Hoffer used the information in violation of the NDA, or whether damages exist, which the Court will discuss below.  However, to establish wrongful disclosure, Plaintiff need only provide evidence that Hoffer disclosed Plaintiff's proprietary information to a third party.  Plaintiff has introduced e-mails indicating that Hoffer disclosed proprietary information to Monster Media, and Storey testified about other third parties to whom proprietary information was disclosed.  (ECF Nos. 191-7; Pl.'s Depo. pp. 8-9.)  Furthermore, Hoffer disclosed this information to Monster Media from his e-mail

address at "newforth.com", and signed the e-mails "Robert Hoffer, Managing Director,

Newforth Partners LLC".[4]  (ECF No. 191-7.)  A reasonable jury could rely on this

information and find that Hoffer, on behalf of himself and Newforth, disclosed

proprietary information in violation of the NDA.  Therefore, summary judgment is not

appropriate on Plaintiff's NDA claim.

Because Defendants' request for summary judgment with respect to Plaintiff's

claim for breach of the implied covenant relies on a finding that Plaintiff failed to adduce

evidence supporting its NDA claim, summary judgment is also inappropriate with

respect to the implied covenant claim.

2.    Breach of Promise to Grant License

Defendants argue that summary judgment should be granted in their favor on

Plaintiff's claim for a breach of the promise to grant a license because such promise did

not constitute a contract.  (ECF No. 157 at 15.)  Specifically, Defendants argue that

Plaintiff has presented no evidence of consideration for Hoffer's promise, on behalf of

Dhando, to give Plaintiff a license of the IP Assets.  (*Id.*)  In response, Plaintiff contends

that it expended resources in marketing the IP Assets to its contacts at McDonald's and

created a plan for their use, which constitutes consideration, or alternatively is

---

[4] Defendants further argue that Plaintiff cannot show that Newforth is liable for any breach of contract because it dismissed its claims for alter ego.  (ECF No. 157 at 17-18 (citing ECF No. 150).)  Alter ego is a theory of liability, and need not be asserted as a stand-alone claim. *See McCulloch Gas Transmission Co. v. Kansas-Nebraska Natural Gas Co.*, 768 F.2d 1199, 1200 (10th Cir. 1985) ("The theory of alter ego has been adopted by the courts in those cases where the idea of corporate entity has been used as a subterfuge and to observe it would work an injustice.") (internal quotations omitted).  As Plaintiff has presented evidence that Hoffer was conducting these negotiations with his Newforth e-mail address and his Newforth title, a reasonable jury could conclude that he was doing so on behalf of Newforth without the need for an alter ego theory.

enforceable based on the theory of promissory estoppel.[5]  (ECF No. 193 at 20.)

Pursuant to Colorado law, which the parties agree applies to Plaintiff's claims, any "detriment to the promisee can constitute consideration, however slight." *Luby v. Jefferson Cnty. Bank of Lakewood*, 476 P.2d 292, 294 (Colo. App. 1970).  "A promise for a promise is a valid consideration." *Denver Indus. Corp. v. Kesselring*, 8 P.2d 767, 768 (Colo. 1932).  Defendants argue that even if Storey's reliance on Hoffer's promise of a license to "secure[] business with McDonald's" constituted consideration, Plaintiff failed to actually secure such business, as evidenced by Plaintiff's admission that no such deal was ever made.  (ECF No. 157 at 16.)  However, the failure to complete the deal does not negate Plaintiff's promise to secure the business, which promise Plaintiff exchanged for Hoffer's promise to license the IP Assets to Plaintiff for that purpose. Because a promise serves as valid consideration for another promise, the Court finds that Storey's testimony satisfies the consideration requirement.  There is at least a dispute of fact as to whether Hoffer's promise on Dhando's behalf to grant a license to Plaintiff was an enforceable contract, and thus summary judgment for lack of consideration is inappropriate.

---

[5] Plaintiff further argues that its promise to pay the license fees to Dhando is adequate consideration in exchange for the promise to grant it the license.  (*Id.*)  However, this contradicts the Affidavit of Mr. Suarez, who attests that Hoffer stated that "he will give D.A.D. and Jessam a free Reactrix software license".  (ECF No. 191-13 at 3.)  Plaintiff cites no evidence in the record demonstrating its intention to pay license fees, and the Court finds no evidence supporting such an assertion.  Furthermore, the Court notes numerous instances in Plaintiff's briefing where Plaintiff has asserted a fact and supported it only with its own Amended Complaint.  (*See, e.g.*, ECF No. 193 at 11-12, 14.)  An allegation in an unverified complaint cannot supply evidence of a genuine dispute of material fact. *Williams v. McCallin*, 439 F. App'x 707, 710 (10th Cir. 2011) ("the unverified complaint is not evidence").

3.     Damages

Defendants argue that summary judgment is appropriate on all of Plaintiff's claims because Plaintiff has adduced no evidence of damages.  (ECF No. 157 at 11-14.)  Defendants point out that Plaintiff indicated in its discovery responses that its damages would be demonstrated through an expert opinion, but Plaintiff never provided any such expert report, nor did it supplement that response to indicate any further source of damages.  (*Id.* at 11-13.)

Plaintiff does not defend its failure to supplement its discovery responses, but argues that its damages are evidenced by its testimony with respect to lost sales opportunities to, *e.g.*, Microsoft and McDonald's, and that Hoffer himself contended, in communications with Intellectual Ventures, that the IP Assets were worth millions of dollars in licensing fees.  (ECF No. 193 at 22-23 (citing ECF No. 192-2).)  Storey testified that he reviewed the IP Assets when Plaintiff was working with Reactrix as a consultant, and subsequently determined that Microsoft's use of the relevant IP Assets in its Kinect game system was worth approximately $270 million.  (Pl.'s Depo. pp. 124-25.)  While this limited evidence may not suffice to convince a jury at trial, the Court need only determine at the summary judgment stage whether sufficient evidence exists for a reasonable jury to find that Plaintiff suffered damages.  The Court finds that a reasonable jury could believe Storey's testimony regarding the cost of the lost business opportunities resulting from Defendants' obstruction of Plaintiff's ability to purchase the IP Assets, and conclude that Plaintiff suffered damages.

Defendants suggest that this evidence is insufficient because it is based on Storey's speculation as to the value of the Microsoft license, and that damages must be

traceable to the defendant's actions.  (ECF No. 202 at 7.)  Defendants correctly note that "[a]n award of damages cannot be based on mere speculation or conjecture . . . ." *Tull v. Gundersons, Inc.*, 709 P.2d 940, 943 (Colo. 1985).  However, "once the fact of damage has been established with the requisite degree of certainty, uncertainty as to the amount of damages will not bar recovery."  *Id.* (noting that the requisite degree of certainty is by a preponderance of the evidence).  Although Plaintiff must establish its damages without resort to speculation and by a preponderance of the evidence to obtain a damages award at trial, it need not show a preponderance of the evidence for the purposes of summary judgment.  The Court finds that there is a genuine dispute of fact as to whether Plaintiff suffered damages here, which suffices to deny summary judgment.

With respect to causation, the Court finds that Storey's testimony provides sufficient evidence for a reasonable jury to conclude that Plaintiff lost its ability to purchase and profit from the IP Assets because of Defendants' breaches of contract and misrepresentations.  Defendants suggest that Plaintiff never could have purchased the IP Assets in the first instance, because it admitted it did not have the funds to do so on its own and because its alleged partnership with Jessam to provide such funds was not in writing.  (ECF No. 157 at 21.)  On summary judgment, Plaintiff need only provide evidence such that a reasonable jury could find that the partnership existed, and a party's credible testimony is such evidence.  Defendants admit that Storey testified that the partnership existed.  (ECF No. 202 at 14 (citing Pl.'s Depo pp. 265-76); *see also* Pl.'s Depo. p. 6; ECF No. 191-13 at 1.)  Thus, there is a genuine dispute of fact as to whether Defendants' actions caused Plaintiff's lost business opportunities and resulting

14

damages.

Accordingly, summary judgment is inappropriate based on the lack of evidence of damages.

## IV.  CONCLUSION

For the foregoing reasons, both Defendants' Motion to Strike (ECF No. 200) and Defendants' Motion for Summary Judgment (ECF No. 157) are DENIED.  This case shall be promptly set for a Final Pretrial Conference.

Dated this 31st day of March, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge

15